IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY OF AMERICA, THE PHOENIX INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>BODELL CONSTRUCTION COMPANY, SUNSTONE REALTY PARTNERS X, LLC, STEADFAST INSURANCE COMPANY,<br><br>Defendants. | Case No. 20-cv-00288-DKW-WRP<br><br>**ORDER CERTIFYING QUESTIONS TO THE HAWAIʻI SUPREME COURT** |

## INTRODUCTION

Pending before the Court is Defendant Bodell Construction Company's (Bodell) motion for partial summary judgment and Defendant Sunstone Realty Partners X, LLC's (Sunstone) substantive joinder in said motion. Both Bodell and Sunstone seek summary judgment as to Plaintiffs' St. Paul Fire and Marine Insurance Company (St. Paul), Phoenix Insurance Company (Phoenix), The Travelers Indemnity Company of America (Travelers Indemnity), and Travelers Property Casualty Company of America (Travelers Property, and, collectively,

Plaintiffs) claims for equitable reimbursement of defense fees and costs.  As more fully discussed below, the principal dispute between the parties is a legal one: whether the State of Hawaiʻi authorizes equitable reimbursement of defense fees and costs incurred by an insurer in litigating on behalf of its insured.

Having reviewed the parties' briefing on this matter, the Court finds that certifying the questions set forth in greater detail below is the appropriate course of action because, pursuant to Rule 13(a) of the Hawaiʻi Rules of Appellate Procedure (HRAP), the questions are determinative of the cause, and there is no clear controlling precedent in Hawaiʻi's judicial decisions.[1]

Pursuant to HRAP 13(b), below, the Court sets forth a statement of prior relevant proceedings in this case, a statement of facts showing the nature of the cause, the circumstances out of which the questions arise, and the questions of law to be answered.

### STATEMENT OF PRIOR PROCEEDINGS

On June 25, 2020, Plaintiffs filed a Complaint against Bodell, Sunstone, and Steadfast Insurance Company (Steadfast, and, collectively, Defendants).  Dkt. No. 1.  Plaintiffs allege that they issued various "commercial liability" and "commercial

---

[1] Although the parties recognize that there is no clear controlling precedent in Hawaiʻi's judicial decisions on this matter, none of the parties have requested certification to the Hawaiʻi Supreme Court.  Nonetheless, the Court finds certification to be the most appropriate course of action here and, thus, raises certification sua sponte.  *DW Aina Leʻa Dev., LLC v. State of Haw. Land Use Comm'n*, 918 F.3d 602, 609 n.6 (9th Cir. 2019).

excess liability" insurance policies to Bodell. Further, in 2015, the Association of Apartment Owners of Ali'i Cove (AOAO) sued Sunstone, the developer of Ali'i Cove, in the First Circuit Court of the State of Hawai'i for selling condominium units with defective "embedded straps" and numerous other defects. Sunstone, in turn, sued Bodell, the company that had allegedly performed construction work, including the use of the embedded straps, at Ali'i Cove. Sunstone and Bodell then tendered the defense of their respective lawsuits to their insurance carriers, some or all of whom accepted the defenses "under a full reservation of rights including the right to seek reimbursement of any defense related payments made on behalf of [Sunstone and/or Bodell]…with respect to claims not covered by the policies."

Among other claims in the Complaint, Plaintiffs seek a declaration that they owe no duty to defend or indemnify Bodell or Sunstone with respect to any claims asserted in the Ali'i Cove litigation. More pertinent to the instant matter, Plaintiffs also seek equitable reimbursement from Bodell and Sunstone of fees and costs incurred in defending them in the Ali'i Cove litigation. As of the filing of the Complaint, Plaintiffs alleged that, in total, these fees and costs exceeded $1.25 million.

After a series of motions for partial summary judgment were filed by the parties, the Court, on May 2, 2022, ruled as follows. Dkt. No. 156. First, the Court found that, with respect to insurance policies issued between September 30, 2003

3

and September 30, 2012, Plaintiffs had no duty to defend or indemnify Bodell or Sunstone for claims asserted in the Ali'i Cove litigation because those claims were not covered by the applicable policies. Second, the Court found that, with respect to insurance policies issued between September 30, 2012 and September 30, 2016, (1) simply because damages in the Ali'i Cove litigation may have resulted from work self-performed by Bodell did not mean that Plaintiffs had no duty to indemnify for those damages, (2) payment for "one occurrence" was limited by language in the applicable policies, and (3) the Ali'i Cove litigation involved more than one occurrence under the applicable policies.

On September 1, 2022, the parties entered a Joint Stipulation in which the parties, *inter alia*, stipulated that Phoenix had a duty to defend Bodell and Sunstone under four policies issued by Phoenix to Bodell from September 30, 2012 to September 30, 2016 (collectively, "the Phoenix Policies"). Dkt. No. 170.

On September 6, 2022, the parties initiated another round of summary-judgment practice, one of which, as discussed in more detail below, concerns the matter at issue here.

## STATEMENT OF FACTS

Plaintiffs have issued various "commercial liability" and "commercial excess liability" insurance policies to Bodell, including the Phoenix Policies. The Phoenix Policies do not contain an express provision providing for the reimbursement of

defense fees or costs.   According to Plaintiffs, the reimbursement of defense fees and costs under the Phoenix Policies is a "term implied in fact."

In 2003, Bodell was hired by developer Sunstone as the general contractor for construction work at Ali'i Cove, a condominium project.   Ali'i Cove consisted of approximately 37 buildings and 1 recreation center that were constructed over the course of 4 years.

On August 14, 2015, the AOAO filed an action against Sunstone ("the Underlying Litigation") in the First Circuit Court of the State of Hawai'i ("First Circuit Court").   The Complaint and First Amended Complaint in the Underlying Litigation alleged that Sunstone developed, built, and sold condominium units using embedded straps that did not meet building codes, instead of bolting house frames to their foundation.   The AOAO demanded the replacement of the embedded straps and the repair of all defects.   On March 21, 2017, the AOAO filed a Second Amended Complaint against Sunstone, alleging numerous additional defects beyond the embedded straps, including those relating to site conditions, structural issues, building envelope, roofing, general architecture, mechanical, plumbing, and electrical.

Sunstone filed a Third-Party Complaint in the Underlying Litigation against various entities, including Bodell and Becerra Concrete Construction ("Becerra").   The Third-Party Complaint alleged that Bodell oversaw construction at Ali'i Cove,

including the installation of the embedded straps in all units. The Third-Party Complaint also alleged that Becerra was the subcontractor responsible for concrete and masonry work, including work associated with setting the embedded straps.

In March 2016, Sunstone tendered the defense of the Underlying Litigation to St. Paul, Phoenix, and Travelers Indemnity pursuant to policies issued to Bodell. St. Paul, Phoenix, and Travelers Indemnity agreed to defend Sunstone under a full reservation of rights. Also in March 2016, Bodell tendered the Underlying Litigation to its insurance carriers. Two of Bodell's insurers, Phoenix and Travelers Indemnity, agreed to defend Bodell under a full reservation of rights. In the reservation of rights letters to Bodell and Sunstone, the applicable Plaintiffs reserved the right to seek reimbursement of defense related payments "with respect to claims not potentially covered by the policy," even though no express term of the relevant policies addressed reimbursement.

At some point, the Underlying Litigation was stayed pending the outcome of two arbitrations. In one arbitration, the AOAO arbitrated its claims against Sunstone and, on April 29, 2020, a settlement was reached between them. Sunstone and Steadfast, Sunstone's insurer, funded the settlement.

The second arbitration involved Sunstone's third-party claims against Bodell ("the Second Arbitration"). On June 18, 2021, an Arbitration Decision and Award ("the Award") was issued in the Second Arbitration in favor of Sunstone. The

arbitrator relied on a Subrogation Response from Trinity ERD ("Trinity Response") as a framework for identifying alleged defects, but did not differentiate between work done by subcontractors versus work done by Bodell.  The Trinity Response included 281 items of alleged defects, including deficiencies in window installations and shower assemblies.  The Award listed numerous defects for which Bodell was responsible or partly responsible.  Some of the alleged defects at Ali'i Cove involved work performed by subcontractors.  On January 10, 2022, the First Circuit Court confirmed the Award.

According to Plaintiffs, they have incurred more than $1.9 million in attorneys' fees and costs in defending the Underlying Litigation and the related arbitrations.

## **LEGAL CIRCUMSTANCES OF THE CERTIFIED QUESTIONS**

On September 9, 2022, Bodell filed a motion for partial summary judgment with respect to Plaintiffs' claim for equitable reimbursement of defense fees and costs.  Dkt. No. 176.  On September 12, 2022, Sunstone filed a joinder to Bodell's motion.  Dkt. No. 179.  On September 30, 2022, Plaintiffs filed an opposition to Bodell's motion.  Dkt. No. 186.  On October 14, 2022, Bodell and Sunstone each filed replies in support of the motion and joinder, respectively.  Dkt. Nos. 202-203.

Bodell and Sunstone argue that, because no Hawai'i appellate court has recognized an insurer's right to reimbursement of defense fees or costs, Plaintiffs

should not be allowed to recover them here.   Bodell and Sunstone also cite to other jurisdictions that have held an insurer has no right to reimbursement of defense costs absent language in a policy providing for the same.   Conversely, Plaintiffs point to a decision, discussed in more detail below, from this District allowing an insurer to obtain reimbursement of defense costs when the insurer reserved that right in a reservation of rights letter, and there was no duty to defend.   Plaintiffs also cite to decisions from California, where insurers are allowed to obtain reimbursement of defense costs, even when the defense involves both covered and uncovered claims.  The Court summarizes some of these decisions below.

On one end of the spectrum is a decision from this District on which Plaintiffs principally rely, *Scottsdale Ins. Co. v. Sullivan Props., Inc.*, 2007 WL 2247795 (D. Haw. Aug. 2, 2007) (*Scottsdale*).   In *Scottsdale*, after concluding that the insurer had no duty to defend its insured, the court predicted that the Hawaiʻi Supreme Court would allow an insurer to seek reimbursement of defense costs when the insurer reserved the right to do so in its reservation of rights letter and the insured accepted the defense.   *Id*. at *7.   Specifically, in predicting Hawaiʻi law in this fashion, the *Scottsdale* court relied on the following.   First, Hawaiʻi's adherence to "general rules of contract construction" for insurance policies, which, according to the court, would result in reimbursement being "implied by the terms of the insurance policy" due to the fact that an insurer does not have a contractual duty to

defend claims with "no possibility of coverage…." *Id*. at *3. Second, Hawaiʻi's recognition of an insurer's right to tender a defense pursuant to a reservation of rights, something which, according to the court, permits an insured to accept or not accept the insurer's terms, such as seeking reimbursement of defense costs. *Id*. at *4. Third, Hawaiʻi's recognition of the doctrine of unjust enrichment, which, according to the court, is implicated if an insurer pays defense costs and is then determined not to have had a duty to defend. *Id*. Fourth, Hawaiʻi courts frequently following California case law on insurance coverage issues and California courts allowing reimbursement of defense costs. *Id*. at *5. Finally, public policy, which the court found favored a right to reimbursement in Hawaiʻi because, otherwise, "an insurer might be tempted to refuse to defend an action…." *Id*. at *6.

Next, is a case from the California Supreme Court, *Buss v. Superior Court*, 939 P.2d 766 (Cal. 1997). There, the California Supreme Court was faced with a "mixed" action, one involving claims both potentially covered and others that were not, and whether an insurer could obtain reimbursement of defense costs in such an action. The *Buss* Court concluded that, as for claims that were at least potentially covered, an insurer could not seek reimbursement of defense costs, while, for claims that were not potentially covered, the insurer could seek reimbursement. *Id*. at 775-776. With respect to the latter claims, the *Buss* Court reasoned that, because an

9

insurer has not been paid premiums for the defense of claims that are not potentially covered, an insured would be unjustly enriched by an insurer having to bear "unbargained-for" costs related to these claims. *Id*. at 776-777. In addition to answering the fundamental question of whether defense costs were reimbursable, the *Buss* Court also held that, in order to obtain reimbursement, the insurer must prove, by a preponderance of the evidence, the defense costs "that can be allocated solely to the claims that are not even potentially covered." *Id*. at 778.

On a different end of the spectrum, at least from *Scottsdale* and *Buss,* is, for example, the Pennsylvania Supreme Court's decision in *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526 (Pa. 2010) (*Jerry's Sport*). There, after concluding "a growing number of courts" have refused to follow *Buss*, the Pennsylvania Supreme Court held that an insurer could not obtain reimbursement of defense costs for a claim with respect to which a court later determines there was no duty to defend, even if the insurer asserted a right of reimbursement in a reservation of rights letter. *Id*. at 538, 546. The *Jerry's Sport* Court stated that it reached this decision because of the "broad duty to defend" under Pennsylvania law and the language of the parties' insurance policies that contained no provision allowing for reimbursement of defense costs. *Id*. at 540-544. The Pennsylvania Supreme Court also observed that it would have reached the same result even if it had adopted the reasoning of *Buss*, explaining that, even though a court had ruled the claim at

10

issue was not covered by the applicable policy, the claim was "potentially covered" and, thus, as in *Buss*, reimbursement of defense costs would not have been allowed for such a claim. *Id*. at 544.

Although the parties and this Court concur that no binding decision on this matter has been rendered by the appellate courts of Hawaiʻi, the Court mentions two cases from the Hawaiʻi Supreme Court that may be of at least some relevance. First, in *Nautilus Ins. Co. v. Lexington Ins. Co.*, 321 P.3d 634, 638 (Haw. 2014), the Hawaiʻi Supreme Court answered various certified questions, including one that asked whether an insurer could look to another insurer's policy to disclaim the duty to defend. In answering that question, the *Nautilus* Court discussed the duty to defend in Hawaiʻi, including the general principle that "all doubts as to a duty to defend are resolved against the insurer and in favor of the insured." *Id*. at 644. The *Nautilus* Court went on, explaining that, if an insurer is uncertain as to the existence of coverage, it has "several options[,]" including defending under a reservation of rights. In further explaining this option, the *Nautilus* Court stated that, "[i]n the event that it is later determined that the insurer had no duty to defend, the insurer may recoup its expenses from the insured." *Id*.

Second, in an earlier decision, *First Ins. Co. of Haw., Inc. v. State of Haw.*, 665 P.2d 648 (Haw. 1983), the Hawaiʻi Supreme Court again discussed, *inter alia*, the duty to defend. In rejecting an insurer's argument that it had discharged its duty

11

to defend by accepting its insured's tender under a reservation of rights letter, the *First Ins.* Court explained that "affording an insured a defense under a reservation of rights agreement merely retains any defenses the insurer has under its policy; it does not relieve the insurer of the costs incurred in defending its insured where the insurer was obligated, in the first instance, to provide such a defense." *Id*. at 654.

In summary, having reviewed the available case law, and the lack of any binding pronouncements from the appellate courts of Hawaiʻi, this Court is reluctant to predict whether an insurer has a right to seek equitable reimbursement of defense fees and costs under Hawaiʻi law. This is particularly so here given the potential impact on the insurance industry in Hawaiʻi of a ruling on this matter. For the same reasons, this Court is also reluctant to predict, in the event an insurer is entitled to seek reimbursement, the parameters of any such right, such as the claims that are reimbursable and the burden of proof.

## **CERTIFIED QUESTIONS**

In light of the above, the Court respectfully certifies the following questions to the Hawaiʻi Supreme Court:

1. Under Hawaiʻi law, may an insurer seek equitable reimbursement from an insured for defense fees and costs when the applicable insurance policy contains no express provision for such reimbursement, but the

       insurer agrees to defend the insured subject to a reservation of rights, including reimbursement of defense fees and costs?

2.     If an insurer may seek equitable reimbursement of defense fees and costs under Hawaiʻi law, (A) for what specific fees and costs may the insurer obtain reimbursement, (B) which party carries the burden of proof, and (C) what is the burden of proof?

The Court does not intend the phrasing of the foregoing questions to restrict the Hawaiʻi Supreme Court's consideration of the relevant issues. If the Hawaiʻi Supreme Court accepts review of the certified questions, it may, of course, reformulate the questions as it deems necessary. And perhaps equally obvious, this Court remains available to answer any questions that the Hawaiʻi Supreme Court may have regarding any of the above.

## **ORDER**

The Clerk of Court is ORDERED to transmit a copy of this Order to the Hawaiʻi Supreme Court under the official seal of the United States District Court for the District of Hawaiʻi. Haw.R.App.P. 13(c). The Clerk is also instructed to provide "original or copies of all or any portion of the record" in this case as the Hawaiʻi Supreme Court may, in its discretion, require. *Id*.

The parties shall file a joint notice in this Court within one week of the Hawaiʻi Supreme Court's decision to accept or reject certification. If the Hawaiʻi

Supreme Court accepts the certified question(s), the parties shall file a joint status report to this Court every six months after the date of acceptance or more frequently if circumstances warrant.

    IT IS SO ORDERED.

    DATED: October 28, 2022 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge