IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>BODELL CONSTRUCTION COMPANY, *et al.*,<br><br>Defendants. | Case No. 20-cv-00288-DKW-WRP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

In the third of four motions for partial summary judgment, Plaintiffs, a group of insurance companies, again move for summary judgment on the first two claims of their Complaint. Specifically, Plaintiffs again seek a ruling that they have no duty to indemnify Defendants Bodell Construction Company and Sunstone Realty Partners X, LLC for what Plaintiffs call "Merely Defective Work" or the repair of such work. Although Plaintiffs have raised this argument in incomplete fashion before, Bodell and Sunstone have not objected to Plaintiffs' second bite, instead electing to respond to Plaintiffs' arguments motion on the merits. The Court, therefore, does as well.

Plaintiffs' motion focuses on four principal issues: (1) whether the work described in the motion caused physical injury or damage to property; (2) whether so-called "rip and tear" damages, which basically amounts to damages caused in repairing defective work, constitute physical damage to property; (3) whether an arbitrator awarded damages for "loss of use" of property; and (4) if the work described in the motion is not covered by the applicable insurance policies, whether it is possible to determine, as a matter of law, the dollar value ascribed to such work.

Having reviewed the parties' briefing on the motion and the evidence submitted in connection therewith, the Court finds that Plaintiffs are entitled to summary judgment with respect to the first three issues set forth above. First, the Court agrees that there is no evidence that the work identified in the motion caused physical injury or damage to property. Second, for purposes of the insurance policies here, "rip and tear" damages do not constitute physical damage to property. Third, there is no evidence that the arbitrator awarded "loss of use" damages that might be covered. However, the Court does not agree with Plaintiffs' contention that there is no genuine dispute of material fact as to the dollar amount that can be assigned to the work at issue in the motion. Therefore, as set forth more fully below, the motion for partial summary judgment, Dkt. No. 173, is GRANTED IN PART and DENIED IN PART.

## RELEVANT PROCEDURAL BACKGROUND

On June 25, 2020, Plaintiffs St. Paul Fire and Marine Insurance Company, The Phoenix Insurance Company (Phoenix), The Travelers Indemnity Company of America, and Travelers Property Casualty Company of America (Travelers Property, and, collectively, Plaintiffs) initiated this case by filing a Complaint against Defendants Bodell Construction Company (Bodell), Sunstone Realty Partners X, LLC (Sunstone), and Steadfast Insurance Company. Dkt. No. 1. Plaintiffs seek a declaration that they owe no duty to defend or indemnify Bodell or Sunstone, as well as reimbursement from Bodell and Sunstone of fees and costs incurred and reimbursement from Bodell of sums paid on Bodell's behalf.

On May 2, 2022, the Court entered an Order that, *inter alia*, granted in part and denied in part Plaintiffs' second motion for partial summary judgment, which sought relief with respect to Claims 1 and 2 of the Complaint. Dkt. No. 156. Among other things, the Court denied relief with respect to an argument concerning the removal and replacement of defective work because the same was not understandable. *Id*. at 33-34. The Court noted, however, that should Plaintiffs wish to clarify the same, they could do so in a brief of no more than five pages and without additional evidence. *Id*. at 34 n.30.

Plaintiffs did not take the Court up on this offer. Instead, on September 6, 2022, four months after the May 2, 2022 Order, Phoenix and Travelers Property

(collectively, Moving Plaintiffs) filed the instant third motion for partial summary judgment (motion). Dkt. No. 173. The memorandum of law related to the motion, Dkt. No. 173-1, coming in at just over 24 pages, again addresses Claims 1 and 2 of the Complaint and again addresses Bodell's allegedly defective work and why the same should not be considered covered by applicable insurance policies. Moving Plaintiffs argue that the work did not cause physical injury to property, any damage caused by efforts to repair the work should not be considered physical injury, an arbitrator did not award "loss of use" damages, and the relevant work can be valued at $1,516,352.

On September 30, 2022, Sunstone filed an opposition to the motion with Bodell joining. Dkt. Nos. 189, 191. Collectively, Bodell and Sunstone argue that the work identified in the motion included loss of use and "rip and tear" damages that are covered by the applicable policies. They both also argue that Moving Plaintiffs have failed to submit admissible or sufficient evidence to establish the amount of damages that can be attributed to the work identified in the motion. On October 14, 2022, Moving Plaintiffs filed a reply in support of the motion. Dkt. No. 200. The parties have also filed concise statements of material facts. Dkt. Nos. 174, 190, 192, 201.

This Order now follows.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## SUMMARY JUDGMENT FACTS

Below, the Court sets forth the facts established by the evidence submitted in connection with the briefing on the motion, viewed in the light most favorable to the non-movants, Bodell and Sunstone.

**1.     The Insurance Policies**

Phoenix issued four commercial liability policies to Bodell, as the named insured, effective from September 30, 2012 to September 30, 2016 (collectively, "the Phoenix Policies"). Moving Plaintiffs' Concise Statement of Facts in Support

of Third Motion for Partial Summary Judgment (PCSF) at ¶ 1, Dkt. No. 174.[1] Travelers Property issued three commercial excess liability insurance policies to Bodell effective September 30, 2012 to September 30, 2015 (collectively, "the Travelers Excess Policies" and, with the Phoenix Policies, "the Policies"). *Id*. at ¶ 2.

The Policies provide that Phoenix and Travelers Property would pay those sums or the "ultimate net loss", respectively, that the insured became legally obligated to pay as damages because of "bodily injury" or "property damage". *Id*. at ¶¶ 3-4. The Policies further provided that insurance applied to bodily injury and property damage only if the same were caused by an "occurrence." *Id*. at ¶ 5. The Policies defined (1) "occurrence" as an "act or omission" that causes "subcontracted work property damage"; and (2) "property damage" as "physical injury to tangible property" or "loss of use of tangible property that is not physically injured." *Id*. at ¶¶ 6-7.

2. **The Underlying Litigation**

On August 14, 2015, the Association of Apartment Owners of Aliʻi Cove ("AOAO") filed an action against Sunstone ("the Underlying Litigation") for alleged construction defects. Sunstone's Concise Statement of Facts in Opposition

---

[1] The Court notes that, at least for the instant analysis, Bodell and Sunstone do not dispute any of the factual assertions made in the PCSF with respect to the issuance and language of the relevant insurance policies. *See* Dkt. Nos. 190, 192.

to the Third Motion for Partial Summary Judgment (SCSF) at ¶ 1, Dkt. No. 192. After the filing of the AOAO's Second Amended Complaint, Sunstone filed a Third-Party Complaint in the Underlying Litigation against Bodell.  *Id*. at ¶ 2.  The Third-Party Complaint alleged that Bodell, the general contractor for Ali'i Cove, had a duty to indemnify and reimburse Sunstone, Ali'i Cove's developer.  PCSF at ¶ 8.  On April 29, 2020, the AOAO's claims against Sunstone resolved through a settlement without apportionment for individual claims.  SCSF at ¶ 4.

During the Underlying Litigation, Sunstone retained Porter Construction, Inc. (PCI) to conduct a cost report on the AOAO's claims.  *Id*. at ¶ 3.  On May 13, 2020, Sunstone's "retained expert," Trinity ERD (Trinity), issued a Subrogation Response (Subrogation Response), outlining the subrogation of claims to Bodell and its subcontractors.  *Id*. at ¶ 6; 5/13/20 Subrogation Response of Trinity ERD, Dkt. No. 174-14.  Of the $14,922,760 enumerated in PCI's cost report, Trinity allocated $11,153,877 to Bodell and its subcontractors.  SCSF at ¶ 8.

During an arbitration between Bodell and Sunstone ("the Arbitration"), the arbitrator, Honorable Marie N. Milks ("the Arbitrator"), considered testimony from 10 witnesses, including 5 experts, over the course of 18 days.  *Id*. at ¶ 6.  The Arbitrator used the Subrogation Response as a "framework to review the items[]" of claimed deficiencies.  6/18/21 Arbitration Decision & Award (Award) at ¶¶

3.8-3.9, Dkt. No. 174-17.  Bodell did not prepare a cost report for the Arbitration.  SCSF at ¶ 9.

In a Budget for Construction, PCI estimated $1,063,580.22 would be incurred for "Contents Manipulation and Move Out[.]"  12/18/19 Budget for Construction of PCI at ¶ 10.0, Dkt. No. 174-16.[2]  Of this amount, Sunstone's expert testified at the Arbitration that Bodell was responsible for $749,919.86.  SCSF at ¶ 24.[3]  More generally, at the Arbitration, Sunstone's expert testified about the calculation of loss of use damages necessitated by the proposed scope of remediation.  Id. at ¶ 20.

On June 18, 2021, the Arbitrator issued an Arbitration Decision and Award ("the Award").  PCSF at ¶ 9; Bodell's Concise Statement of Facts in Support of Joinder (BCSF) at ¶ 1, Dkt. No. 190.  Therein, Sunstone was awarded $8,351,848 and $1,252,777 for attorneys' fees and costs.  Award at 20.[4]  The Award listed numerous defects for which Bodell was partly or fully responsible.  BCSF at ¶ 2.

---

[2] In their response to the SCSF, Moving Plaintiffs argue that all statements of fact related to so-called "loss of use" are denied due to relevance.  Dkt. No. 201 at 2-3.  However, whether or not "loss of use" damages were awarded by the Arbitrator, the statements of fact related to the same are, at the very least, relevant in providing context to the parties' dispute and, thus, are included herein.

[3] In the SCSF, Sunstone also states that a "Conceptual Cost Estimate" prepared by the AOAO included over $4 million in "loss of use" damages.  SCSF at ¶ 19.  The document and page number cited therein do not support this statement, however.  First, there is no indication on the document cited that it is, in fact, a cost estimate prepared by the AOAO.  Instead, the only indication of authorship is a heading at the top that states "Allocation Based on Porter Construction's Pricing."  Dkt. No. 192-3 at 1.  Second, the page cited in the document does not clearly state that "loss of use" damages are more than $4 million.  In fact, the Court cannot discern any such number in the estimate.  At best, the only apparent "loss of use" damages on the page cited, for "Relocation", amount to $450,000.  See id.

[4] Both Bodell and Sunstone state that Sunstone was awarded $8,351,*484*.  BCSF at ¶ 5; SCSF at ¶ 10.  The amount in the Award, however, is slightly different.  See Award at 20.

In the Arbitration, some of these defects were not alleged to have suffered or caused property damage (collectively, these defects shall be referred to herein as "the Work"). PCSF at ¶¶ 12-72.[5] The Work includes defects that require the removal of existing finishes to access the defects identified. SCSF at ¶ 15.

The Award does not include damages for the costs of moving out of units affected by the Work. *See generally* Award; *id*. at ¶¶ 3.10-3.22.[6] The Award also does not discuss each individual alleged defect in the sense that the nature of each defect and the work to fix the same is described or stated in words. *See generally id*. Instead, the Award refers to each defect by a number designated in the Subrogation Response. *See id*. at ¶¶ 3.10-3.21. In addition, the Award does not specify the amount of damage attributable to each defect listed in the Award. *See generally* Award.[7] Further, after the filing of a motion by Bodell, the Arbitrator declined to clarify the Award "to reflect an item by item breakdown of the total $8,351,848 awarded…." 7/15/21 Order of the Arbitrator at 2, Dkt. No. 190-2.

---

[5] For various reasons, Bodell and Sunstone dispute these statements of fact from Moving Plaintiffs. Bodell's Response to PCSF at 2, Dkt. No. 190; Sunstone's Response to PCSF at 3-4, Dkt. No. 192. In the Discussion section below, the Court explains the reasons for overruling these objections.
[6] Sunstone disputes this statement of fact. Sunstone's Response to PCSF at 3. In the Discussion section below, the Court explains the reasons for overruling this objection.
[7] Moving Plaintiffs appear to dispute this statement of fact. *See* Plaintiffs' Response to BCSF at ¶ 7, Dkt. No. 201. In the Discussion section below, the Court explains the reasons for overruling these objections for purposes of the instant analysis.

On January 10, 2022, the First Circuit Court confirmed the Award. SCSF at ¶ 13. On January 28, 2022, the First Circuit Court entered a money judgment in favor of Sunstone. *Id.*

## INSURANCE COVERAGE PRINCIPLES

Ordinarily, "the insured has the burden to prove that a loss is covered under the terms of the insurance policy." *Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawaii, Ltd.*, 875 P.2d 894, 909 n.13 (Haw. 1994). In doing so, the terms of the policy, including undefined terms, should be interpreted according to their "plain, ordinary, and accepted sense in common speech" unless a different meaning is intended. *Allstate Ins. Co. v. Pruett*, 186 P.3d 609, 617 (Haw. 2008). However, "because policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys," "they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." *Id.* (quotation and citation omitted).

In addition, the duty to indemnify and the duty to defend an insured are separate and distinct. *Dairy Road Partners v. Island Ins. Co., Ltd.*, 992 P.2d 93, 107 (Haw. 2000). Here, Moving Plaintiffs seek summary judgment with respect to their duty to indemnify Bodell and Sunstone. Dkt. No. 173 at 3. The duty to indemnify "is owed to the insured for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a

policy exclusion." *Dairy Road*, 992 P.2d at 108 (citation and quotation omitted). In this regard, a court may "consider *any* competent evidence" submitted by the parties, "even if the evidence might be subject to dispute in the underlying lawsuits." *Id*. at 118 (emphasis in original).

## DISCUSSION

As mentioned, the motion and the parties' related briefing raise four principal issues: (1) whether the Work caused physical injury or damage to property; (2) whether so-called "rip and tear" damages constitute physical damage to property for purposes of the Policies; (3) whether the Arbitrator awarded damages for "loss of use" of property; and (4) if the Work is not covered by the Policies, whether it is possible to determine, as a matter of law, the dollar amount ascribed to such work. The Court addresses each in turn below.

### I.  Physical Injury or Damage to Property

Moving Plaintiffs argue that for damages to be covered under the Policies, the same must be "property damage" caused by an "occurrence" as defined in the Policies. Dkt. No. 173-1 at 15-16. Moving Plaintiffs continue that one way in which those terms are defined includes the need for "physical injury to tangible property," and the Work did not involve any such injury.

The Court agrees in no small part because, except with respect to "rip and tear" damages, which is discussed in Section II below, neither Bodell nor Sunstone

11

disagree. Dkt. No. 191 at 6-8; Dkt. No. 189 at 8 (adopting Sunstone's arguments with respect to "rip and tear" damages). There is no other argument or (equally, if not more, importantly) *evidence* presented by either Bodell or Sunstone to dispute Moving Plaintiffs' assertion that there is no genuine dispute of material fact in this regard. *See* Dkt. No. 190 at 2; Dkt. No. 192 at 3-4. The only additional arguments Bodell arguably raises are, in its response to the PCSF, that (1) Moving Plaintiffs' facts in this regard are only their "interpretation" of the Subrogation Report and (2) the Arbitrator made no findings on whether the Work involved property damage. *See* Dkt. No. 190 at 2. The latter, however, proves the evidentiary point here: there is no evidence Bodell or Sunstone can cite indicating that the Work involved property damage, a coverage issue on which Defendants bear the burden. The fact the Arbitrator did not (or was not required to) make such a finding is, thus, hardly surprising. The former, meanwhile, does not defeat the point that an absence of genuine issue of material fact exists here, which is all that Moving Plaintiffs are required to show. *See Dairy Road*, 992 at P.2d at 108. Therefore, Moving Plaintiffs are entitled to summary judgment on this issue.

## II.  "Rip and Tear" Damages

Sunstone and Bodell do, however, argue that the removal of non-defective finishes, in order to repair or access the Work, is "property damage" and, thus, damages related to the same are covered by the Policies. Dkt. No. 191 at 6-8; Dkt.

No. 189 at 8 (Bodell joining in Sunstone's arguments).  Moving Plaintiffs argue the exact opposite: when defects, such as the Work, do not otherwise cause "property damage", damage that may be caused in repairing such defects cannot be "property damage" under the Policies.  Dkt. No. 173-1 at 21-23.

As initial matters, the parties first appear to acknowledge that the State courts of Hawaiʻi have not addressed this issue, given that no party cites to any applicable Hawaiʻi case law.  *See id*. at 23; Dkt. No. 191 at 6-8.  Second, the parties' dispute in this regard is purely a legal one, as Moving Plaintiffs do not dispute *factually* (as opposed to on relevance grounds) Sunstone's assertion that finishes would be removed in repairing at least some of the Work.  The question, therefore, is whether, under Hawaiʻi law, such "damage" is "property damage" for purposes of the Policies.

The Court finds that it is not.  Notably, in California, courts have not interpreted "physical injury to tangible property," the language at issue here, to include "the cost to repair a defective product or structure."  *F&H Constr. v. ITT Hartford Ins. Co.*, 12 Cal. Rptr. 3d 896, 901 (Cal. Ct. App. 2004).  The reason for this is that insurance policies, such as the Policies here, "are not designed to provide contractors and developers with coverage against claims their work is inferior or defective."  *Id*.  Further, "[i]f replacement and repair costs were covered, the incentive to exercise care or to make repairs at the least possible cost would be

13

lessened since the insurance company would be footing the bill." *Id*. at 902. This is the reasonable result: if a defect has not caused physical injury, then *repairing* the defect should not create one, even if, as Sunstone contends, doing so means the "removal" of other finishes. *See Dairy Rd.*, 992 P.2d at 107 (explaining that insurance policies should be "construed in accord with the reasonable expectations of a layperson.") (quotation and citation omitted).

Although Sunstone disagrees, the cases it cites provide little to no support for its position. In fact, two cases cited by Sunstone undermine its position. First, in *Vill. at Deer Creek Homeowners Ass'n, Inc. v. Mid-Continent Cas. Co.*, 432 S.W.3d 231, 243 (Mo. Ct. App. 2014), constructive defects *caused* property damage: notably, water intrusion. As a result, the court found that the cost to repair the defects was *also* covered. *Id*. ("*Once defective construction causes damage*, the cost to repair the damage is covered 'property damage.'") (emphasis added). Similarly, in *Am. Family Mut. Ins. Co. v. Wilkinson Family Revocable Tr.*, 2012 WL 12507658 (D. Ariz. Jun. 1, 2012), construction defects again caused property damage: this time, moisture to soil under the slab of a home. *Id*. at *5. Therefore, the cost to tear out tiles, concrete, and the engineered pad were covered. *Id*. at *6. As the court explained, "faulty workmanship or getting to faulty workmanship is not covered, but resulting damage or getting to resulting damage is covered." *Id*. at *5.

14

The only case that provides some, but ultimately unpersuasive, support for Sunstone is *Dewitt Constr. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127 (9th Cir. 2002). In that case, applying Washington law, the Ninth Circuit concluded that the destruction of non-defective work performed by contractors other than the insured was covered property damage. *Id.* at 1134. Importantly, though, the Ninth Circuit had earlier concluded that, under Washington law, the insured's defective work constituted an "occurrence" under the relevant policies. *Id.* at 1133. This is not the case here where the existence of an "occurrence" is, in part, dependent on whether there has been "property damage." In other words, in *Dewitt*, there was an "occurrence" independent of the alleged "rip and tear" damages, while here, there is none. Therefore, the Court does not find *Dewitt* helpful to Sunstone.

In summary, the alleged "rip and tear" damages upon which Sunstone relies do not constitute "property damage" for purposes of the Policies and, thus, there has been no "physical injury to tangible property" here.

### III. "Loss of Use"

The parties dispute whether the Arbitrator awarded "loss of use" damages, such as expenses to temporarily move-out of units defectively constructed, in the Award. Moving Plaintiffs argue that the Arbitrator did not, citing paragraph 3.22 of the Award. Dkt. No. 173-1 at 20; PCSF at ¶ 11. Sunstone and Bodell argue otherwise, citing evidence "considered" by the Arbitrator, such as testimony during

15

the Arbitration. Dkt. No. 191 at 8-10; SCSF at ¶ 14; Dkt. No. 189 at 8 (Bodell joining in Sunstone's arguments).

Having reviewed the parties' arguments and the evidence they cite, the Court agrees with Moving Plaintiffs that the *Award*, as opposed to evidence that may have been heard during the Arbitration, does not include, expressly or otherwise, damages for "loss of use." The Award is clear as to what has and has not been "factored into this Arbitrator's evaluation and calculations." Award at ¶ 3.22. Specifically, anything *omitted* from paragraphs 3.10 through 3.20 did *not* factor into the Arbitrator's calculations. The relevant question then is: what *is* included in paragraphs 3.10 through 3.20. The answer is (1) a very long list of roughly 281 construction defects and (2) certain testimony heard during the Arbitration. *See id*. at ¶¶ 3.10-3.20. Not one of the listed construction defects, though, concerns "loss of use" damages, such as move-out expenses. And Sunstone does not contend otherwise. Moreover, none of the testimony referenced by the Arbitrator concerned "loss of use" damages. Instead, all of the testimony included in the relevant paragraphs concerns some form of construction issue. *See id*. at ¶¶ 3.10 ("construction defect"), 3.11 ("architectural issues"), 3.15 ("electrical engineering"), 3.19 ("mechanical engineering"), 3.20 ("construction, scope and

cost").[8]  *Nowhere* in the Award does the Arbitrator mention "loss of use" or any other phrase that might be interpreted as "loss of use" damages.  *See generally* Award.  And, again, Sunstone does not contend otherwise.

Instead, Sunstone relies upon testimony and other evidence from the Arbitration.  The Court does not dispute that "loss of use" testimony and evidence were presented at the Arbitration.  But that is of little relevance where the Arbitrator specifically stated what was and was not factored into her award and never mentioned "loss of use."  The answer why is obvious: the Arbitrator did not award "loss of use" damages.

Because the Award does not provide damages for "loss of use," the related path for finding "property damage" under the Policies is foreclosed.[9]

## IV. The Amount of Damages for the Work

Although the motion is far from a model of clarity, it appears that Moving Plaintiffs also ask this Court to rule, as a matter of law, on the amount of damages awarded for the Work.  *See* Dkt. No. 173-1 at 2-3 ("As such, Phoenix and Travelers Property are each entitled to declarations that there is no coverage under the [Policies] for damages awarded for the repair or replacement of mere defects that were neither damaged nor caused property damage, identified in Exhibit A and

---

[8]The Award appears to contain two paragraphs designated as 3.20.  Award at 13.  In this regard, the Court cites to the second paragraph 3.20.
[9]So it is clear, the Court is not granting summary judgment on the issue of "loss of use" based upon any of the arguments Moving Plaintiffs raise for the first time in their reply.  *See* Local Rule 7.2.

17

totaling $1,516,352."); *but see* Dkt. No. 189 at 5 (Bodell arguing that Moving Plaintiffs do not seek "a determination of the dollar value of the purely defective work.") (quotation omitted).  While Bodell may be right, and no such request is being made, Plaintiffs have certainly submitted evidence that they contend shows damages for the Work totaling $1,516,352.  Therefore, the Court opts to comment on that evidence.

The evidence Plaintiffs have submitted with the motion is insufficient to establish, as a matter of law, the amount of damages awarded for the Work by the Arbitrator.  To repeat, summary judgment is appropriate when, *inter alia*, "there is no genuine dispute as to any material fact."  Fed.R.Civ.P. 56(a).  In addition, all facts are construed in favor of the non-movants, Bodell and Sunstone.  Plaintiffs' own statements reflect why these principles cannot result in summary judgment on this issue.  Notably, Plaintiffs describe their calculations as follows:

> Based upon the arbitrator's explanations above, it appears that her damages award is based upon the PCI damages estimates for each of the numbers she mentions but does not specifically exclude. These assumptions result in an award total within less than 2% of the actual award and constitute the most reasonable approximation of the arbitrator's ruling.

Dkt. No. 173-1 at 9.

In other words, Plaintiffs have no idea.  They acknowledge that their calculations are based upon appearances, "assumptions" and a purportedly "reasonable" approximation, which is another word for a guess.  It is not this

Court's role, at this stage in the litigation, to decide who has produced the most "reasonable" guess for the damages assigned to the Work. This is especially so where, as here, the factfinder at trial may not agree that Plaintiffs' reliance on PCI's numbers is reasonable. Notably, although Plaintiffs insist that the damages in the Award must be based upon PCI's numbers, neither PCI nor Porter Construction Inc. is ever mentioned by the Arbitrator. That is, at the very least, odd if, as Plaintiffs contend, the damages awarded were meant to be based upon PCI's numbers.[10]

Therefore, because a genuine dispute exists over the amount of damages awarded for the Work, summary judgment is not warranted as to this issue.

## CONCLUSION

To the extent set forth herein, Plaintiffs' third motion for partial summary judgment, Dkt. No. 173, is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

DATED: November 10, 2022 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

---

[10] The closest the Award gets to mentioning an entity resembling PCI is in references in two paragraphs to "Trinity/Porter." See Award at ¶¶ 2.26, 2.41. The parties have never explained to the Court the relationship, if any, between Trinity and PCI, and the Court will not speculate herein whether "Trinity/Porter" and PCI are the same thing. Even if they are, though, the Award's above-cited references to Trinity/Porter concern estimates of $5,656,392.14 and $14,922,760−neither of which remotely resembles the Award of $8,351,848.