IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, *et al*., <br><br> Plaintiffs, <br><br> vs. <br><br> BODELL CONSTRUCTION COMPANY, *et al.*, <br><br> Defendants. | Case No. 20-cv-00288-DKW-WRP <br><br> **ORDER GRANTING PLAINTIFFS' FOURTH MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

For a fourth time, Plaintiffs, a group of insurance companies, move for partial summary judgment in this case, this time arguing that there is no evidence to support Defendant Sunstone Realty Partners X, LLC's counterclaim for breach of the implied covenant of good faith. Plaintiffs state that the sole basis identified for this claim is their decision to "contest[] liability." Plaintiffs argue that such conduct cannot constitute bad faith because they have proceeded precisely as they should to determine relative responsibilities under the applicable insurance policies. Although Plaintiffs' motion is opposed, Sunstone does not dispute (or even address) this point. Instead, Sunstone appears to rely on different grounds for its claim. Specifically, Plaintiffs' purported "failure to reimburse all costs

from the date of tender and substitution of retained counsel shortly before a

scheduled mediation."   Among other things, Plaintiffs respond that Sunstone

should not be allowed to "move the target" of its claim in this fashion.   The Court

agrees.   Sunstone cannot abandon the stated basis of its claim simply because it is

faced with a claim that it cannot support, particularly where, as here, there has been

more than sufficient time to amend the same.   Plaintiffs also challenge the merits

of Sunstone's new-found bases.   The Court also agrees that the claim, as newly

proposed, is without merit and/or evidentiary support.   Notably, Plaintiffs

forewarned Sunstone that they would not continue to pay for Sunstone's counsel

after Plaintiffs exercised their contractual right to select new counsel.   Sunstone

cannot now call foul when Plaintiffs followed through on this warning.   Sunstone

also fails to provide evidentiary support for the contention that Plaintiffs have

failed to pay counsel fees for the period prior to selecting new counsel.   Finally, to

the extent Sunstone contends that Plaintiffs somehow sabotaged the underlying

litigation by substituting counsel, Sunstone provides no evidentiary support for that

either.   Therefore, for the reasons set forth herein, the motion for partial summary

judgment, Dkt. No. 195, is GRANTED.

## <u>RELEVANT PROCEDURAL BACKGROUND</u>

On June 25, 2020, Plaintiffs St. Paul Fire and Marine Insurance Company (St. Paul), The Phoenix Insurance Company (Phoenix), The Travelers Indemnity Company of America (Travelers Indemnity), and Travelers Property Casualty Company of America (Travelers Property, and, collectively, Plaintiffs) initiated this case by filing a Complaint against Defendants Bodell Construction Company (Bodell), Sunstone Realty Partners X, LLC (Sunstone), and Steadfast Insurance Company.   Dkt. No. 1.   Plaintiffs seek a declaration that they owe no duty to defend or indemnify Bodell or Sunstone, reimbursement from Bodell and Sunstone of fees and costs incurred, and reimbursement from Bodell of sums paid on Bodell's behalf.

On August 17, 2020, Sunstone filed an Answer to the Complaint and Counterclaims against Plaintiffs.   Dkt. No. 23.   One of Sunstone's counterclaims is for breach of the implied covenant of good faith and fair dealing, which is premised upon "all of the reasons set forth herein," including Plaintiffs "contesting their liability under the [relevant insurance] policies…."   *Id*. at ¶¶ 50, 68.

On October 7, 2022, Plaintiffs filed the instant fourth motion for partial summary judgment (motion) directed at Sunstone's bad faith counterclaim.   Dkt. No. 195.   On October 26, 2022, Sunstone filed an opposition to the motion, Dkt.

No. 208, to which Plaintiffs replied on November 2, 2022, Dkt. No. 257. The parties have also filed concise statements of material facts. Dkt. Nos. 196, 209, 258.[1]

This Order now follows.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

//

//

---

[1]Defendants Bodell and Steadfast Insurance Company have filed statements of no position with respect to the motion. Dkt. Nos. 205-206.

## SUMMARY JUDGMENT FACTS

Below, the Court sets forth the facts established by the evidence submitted in connection with the briefing on the motion, viewed in the light most favorable to the non-movant, Sunstone.

### 1.   The Insurance Policies

St. Paul issued two commercial liability policies to Bodell, as the named insured, effective from September 30, 2003 to September 30, 2005.   Decl. of Antony Vandermoore at ¶ 3, Dkt. No. 196-3.   Travelers Indemnity issued three commercial liability policies to Bodell, effective from September 30, 2005 to September 30, 2008.   Plaintiffs' Concise Statement of Facts in Support of Fourth Motion for Partial Summary Judgment (PCSF) at ¶ 2, Dkt. No. 196.   Phoenix issued four commercial liability policies to Bodell, effective from September 30, 2008 to September 30, 2012.   *Id*. at ¶ 3.   Phoenix issued an additional four commercial liability policies to Bodell, effective from September 30, 2012 to September 30, 2016 (collectively, "the Phoenix Policies").   *Id*.   Travelers Property issued seven commercial excess liability insurance policies to Bodell, effective September 30, 2005 to September 30, 2012.   *Id*. at ¶ 7.   Travelers Property issued an additional   three commercial excess liability insurance policies

to Bodell, effective September 30, 2012 to September 30, 2015 (collectively, "the

Travelers Excess Policies" and, with the Phoenix Policies, "the Policies").   *Id*.[2]

The Policies provide that Phoenix and Travelers Property have the right and

duty to defend the insured against any suit seeking damages covered by the

Policies.   *Id*. at ¶¶ 4, 8.   The Phoenix Policies further provide that "no insured

will, except at that insured's own cost, voluntarily make a payment, assume any

obligation, or incur any expense, other than for first aid, without [Phoenix's]

consent."   *Id*. at ¶ 6.

## 2.    The Underlying Litigation

On August 14, 2015, the Association of Apartment Owners of Ali'i Cove

("AOAO") filed an action against Sunstone ("the Underlying Litigation") for

alleged construction defects.   Sunstone's Concise Statement of Facts in

Opposition to the Fourth Motion for Partial Summary Judgment (SCSF) at ¶ 1,

Dkt. No. 192; PCSF at ¶ 10.   On March 23, 2016, Sunstone tendered its defense of

the Underlying Litigation to St. Paul, Phoenix, and Travelers Indemnity as an

additional insured under insurance policies issued to Bodell.   PCSF at ¶ 14; SCSF

at ¶ 2.   On November 23, 2016, after multiple communications about the

---

[2]The Court notes that, at least for the instant analysis, Sunstone does not dispute any of the
factual assertions made in the PCSF with respect to the issuance and language of the relevant
insurance policies.   *See* Dkt. No. 209 at 3.

Underlying Litigation, St. Paul, Phoenix, and Travelers Indemnity accepted Sunstone's tender and agreed to defend it subject to a reservation of rights.   PCSF at ¶ 15; SCSF at ¶ 3.

On February 8, 2017, Sunstone's counsel provided Plaintiffs with invoices for the total cost of defense through December 30, 2016.   SCSF at ¶ 4.   On April 20, 2017, Sunstone's counsel emailed Plaintiffs unredacted invoices for defense costs from March 23, 2016 through April 20, 2017.   *See* emails from Cecily Kaya to Sandra Ngo dated April 20, 2017, Dkt. No. 209-3 at 1-2.[4]   On May 23, 2017, Sunstone sent Plaintiffs a letter "clarify[ing]" a letter dated May 16, 2017. 5/23/17 Letter from Cid Inouye to Sandy Ngo at 1, Dkt. No. 209-4.   Among other things, the May 23, 2017 letter stated that the May 16, 2017 letter had enclosed Sunstone's counsel's "final bills" for work completed from December 1, 2016 to March 31, 2017.   *Id*.   On June 5, 2017, Sunstone's counsel re-sent the April 20, 2017 emails to Plaintiffs "upon information that [Plaintiffs] did not have unredacted invoices related to Sunstone's defense."   SCSF at ¶ 7.

---

[3]The evidence is unclear, however, whether Plaintiffs *received* the emails sent on April 20, 2017. *See* Dkt. No. 209-3 at 1 (email dated June 5, 2017 inquiring whether Plaintiffs had received the April 20, 2017 emails); SCSF at ¶ 7.

[4]In citing to the parties' submitted exhibits, the Court cites to the page numbers assigned by CM/ECF in the top right corner of each document, *i.e.*, "Page 1 of 3."

On June 9, 2017, St. Paul, Phoenix, and Travelers Indemnity asserted their right to appoint counsel to represent Sunstone, stating: "If Sunstone wishes to continue to retain the services of [then-counsel] O'Connor Playdon & Guben, it may do so, but at its own expense. From today's date forward, Travelers [Indemnity] will only pay for the defense fees and costs incurred by Mr. O'Neil of MacDonald Rudy." PCSF at ¶ 16.

On June 16, 2017, Plaintiffs provided Sunstone with a check, in the amount of $225,846.25, to reimburse attorney's fees incurred in Sunstone's defense. *See* 6/16/17 Check from "Travelers" to Sunstone, Dkt. No. 209-5 at 55. Phoenix's payments to Sunstone for its defense included $712,212.98 for fees and costs of Sunstone's counsel from March 23, 2016 to June 9, 2017 that were invoiced to Phoenix. Vandermoore Decl. at ¶ 12.[5]

---

[5]The principal factual dispute between the parties is whether Plaintiffs have fully or only partially paid for defense costs incurred by Sunstone from March 23, 2016 to June 7, 2017. Specifically, while Plaintiffs contend that they have done so in full, *see* Vandermoore Decl. at ¶ 11, Sunstone argues that it has been shortchanged by $34,589.99 in defense costs incurred between March 1, 2017 and April 31, 2017, *see* Decl. of Cid Inouye at ¶ 25, Dkt. No. 209-1. Based upon the documentary evidence submitted, the Court does not agree with Sunstone that the same shows Plaintiffs have failed to pay for *invoiced* defense costs.

Sunstone first cites the April 20, 2017 and June 5, 2017 emails referenced above. Assuming those emails were received by Sunstone, at best, they show a summary calculation of "total fees and costs" incurred by what is assumed to be Sunstone's counsel. *See* Dkt. No. 209-3 at 2-3. Sunstone also cites "Exhibit 13," but, at least to the undersigned, it is entirely unclear what this document is meant to be or who created it. *See* Dkt. No. 209-14. If it is meant to be Plaintiffs' calculation of the defense costs that should be paid to Sunstone, it does not show that Plaintiffs have paid less than they should have. Rather, the document appears to reflect Plaintiffs'

### 3.     This Litigation

During discovery, in response to a request from Plaintiffs for all facts

supporting its claim for breach of the implied covenant of good faith and fair

dealing, Sunstone stated, among other things, that "[b]y contesting liability under

the policies, St. Paul has breached [its] policies and the obligations [it] promised to

perform on behalf of Sunstone."   PCSF at ¶ 20 (emphasis omitted).   Sunstone's

initial disclosures, filed on September 15, 2020, stated that it had no affirmative

claims for damages in this action.   *Id*. at ¶ 21.   Sunstone has made no attempt to

amend its prior discovery responses or its initial disclosures to, for instance, add or

change the grounds on which its implied covenant claim is based, or to add or

change its claim for damages in this case.   *Id*. at ¶ 22.

## INSURANCE BAD FAITH PRINCIPLES

In Hawai'i, there is a legal duty on an insurer to "act in good faith with its

insured, and a breach of that duty of good faith gives rise to an independent tort

---

calculation that Sunstone was entitled to $225,846.25 in defense costs for the relevant time period−the same amount all parties agree Sunstone received.   Finally, Sunstone cites what appears to be a chart that may have been used in an arbitration proceeding.   *See* Dkt. No. 209-15.   Putting aside Plaintiffs' seemingly non-frivolous complaints with the authenticity of the chart, *see* Dkt. No. 258-1 at 3-4, even taken on face value, the document does not contradict the assertion that Plaintiffs have paid for defense costs during the relevant period for which they have received invoices.   In that regard, notably, Sunstone has failed to include *a single* invoice in its evidentiary submission, let alone an invoice that has not been paid (in full or in part) by Plaintiffs.   For all of the foregoing reasons, on the submitted record, the Court does not find that Plaintiffs have failed to pay for Sunstone's invoiced defense costs.

cause of action." *Best Place, Inc. v. Penn Am. Ins. Co.*, 920 P.2d 334, 346 (Haw. 1996).   To establish bad faith, an insured:

> need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured. An unreasonable delay in payment of benefits will warrant recovery for compensatory damages…. However, conduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith. In addition, an erroneous decision not to pay a claim for benefits due under a policy does not by itself justify an award of compensatory damages. Rather, the decision not to pay a claim must be in 'bad faith.'

*Id*. (citations omitted); *see also Group Builders, Inc. v. Admiral Ins. Co.*, 2013 WL 1579600, at *13-14 (Table) (Haw. Ct. App. Apr. 15, 2013) (applying the *Best Place* standard to a "third-party" case); *Best Place*, 920 P.2d at 338 n.4 (explaining that a "third-party" claim "is one where the insurer contracts to defend the insured against claims made by third-parties against the insured and to pay any resulting liability, up to the specified dollar limit[,]" such as is the case here).

## DISCUSSION

For the reasons discussed below, Sunstone's claim for bad faith is both procedurally and substantively infirm.   The Court addresses each infirmity in turn.

## I.   Procedural Infirmities

In filing its counterclaims against Plaintiffs in this action, Sunstone's bad faith counterclaim began vaguely: "for all of the reasons set forth herein[,]"

10

Plaintiffs breached the duty of good faith and fair dealing.   The only apparent reason "set forth" in the counterclaims, though, seemed to be Plaintiffs "contesting their liability under the policies[.]"   This assumption was subsequently confirmed in Sunstone's discovery responses: "By contesting liability under the policies, St. Paul has breached [its] policies and the obligations [it] promised to perform on behalf of Sunstone."   This confirmation seemingly allowed Plaintiffs, and the Court, to properly assess Sunstone's bad faith claim.

In August 2022, the parties met to confer over Plaintiffs' proposed motion for summary judgment on the bad faith claim, as required by this Court's local rules.   Dkt. No. 195 at 4; LR7.8.   According to Plaintiffs, it was only at this moment that Sunstone expressed that its bad faith claim was not as it appeared on paper.   In other words, instead of being premised upon Plaintiffs "contesting their liability," it was now a claim based upon Plaintiffs failing to fully pay Sunstone's defense costs.   *See* Dkt. No. 195-1 at 17.   Sunstone does not even address (let alone dispute) this narrative in their opposition to the motion.   Rather, it essentially confirms the same, given that, in its opposition, Sunstone does not even mention the originally alleged and disclosed basis for its bad faith counterclaim. *See generally* Dkt. No. 208.

This is entirely inappropriate.   Among other things, as *alleged*, Sunstone's bad faith counterclaim still concerns Plaintiffs' conduct in contesting their liability under the relevant insurance policies.   Sunstone, though, has essentially abandoned that claim (by not defending it) and attempted to allege a new one through its opposition to the motion for summary judgment.   At the very least, however, that is untimely, given that the time to amend pleadings has long passed. *See* Dkt. No. 164 at 2 (stating that the time to amend pleadings had "closed" as of July 29, 2022).[6]   Moreover, Sunstone does not even ask for leave to amend its bad faith counterclaim out-of-time, or, for that matter, for leave to amend its discovery responses.   In this light, therefore, procedurally, the new claim or claims of bad faith that Sunstone attempts to bring, for the first time, in its opposition to the motion are infirm.[7]

---

[6]Although it would not have been appropriate for Sunstone to amend its pleading during a meet-and-confer on the motion, the Court notes that the passing of the July 29, 2022 deadline would have made even the meet-and-confer disclosure untimely.

[7]In its opposition, Sunstone arguably attempts to address the procedural infirmities with its new-found claim(s).   First, it argues that Plaintiffs have been on notice of Sunstone's unstated bad faith claim because it is a "mirror" of Count VI of the Complaint.   Dkt. No. 208 at 7.   Even if that were so, it would still not explain the deficiency in Sunstone's own counterclaim in failing to even suggest that Count VI of the Complaint was a "mirror" of the same.   As important, the allegations of Count VI and the bad faith counterclaim are patently not a "mirror" of each other. Count VI concerns the payment of defense costs *after* Plaintiffs appointed counsel for Sunstone. Sunstone's newly asserted bad faith counterclaim concerns the purported non-payment of defense costs *before* said appointment.   Second, Sunstone seems to imply that its new counterclaim has only now been alleged due to "delay[]" caused by Plaintiffs' "failure to provide its claim file until October 14, 2022."   *Id*.   However, no such discovery-related concern has been brought to the Court's attention.   And Sunstone has certainly not moved under Federal

## II.    <u>Substantive Infirmities</u>

None of the iterations of Plaintiffs' bad faith counterclaim have merit and/or evidentiary support.   The Court addresses each below.

Sunstone's original counterclaim, as discussed, concerned Plaintiffs' decision to contest liability.   As also discussed, Sunstone does not attempt to defend this as a valid basis for a bad faith claim under Hawaiʻi law.   For good reason: alone, there is nothing unreasonable or improper about an insurer seeking to determine its liability (or lack thereof) under insurance policies that have been invoked by an insured.   Were it otherwise, *any* coverage action filed by an insurer would be accompanied by the penalty of bad faith, severely impairing an insurer's ability to simply exercise its legal rights.   Because, standing alone, there is nothing unreasonable about Plaintiffs' conduct in this regard, they are entitled to summary judgment on the counterclaim of bad faith, as pled.

In its summary judgment opposition brief, Sunstone attempts to bring two new bases for its counterclaim: (1) the insurers' purported failure to reimburse all defense costs; and (2) the insurers' allegedly substituting appointed counsel

---

Rule of Civil Procedure 56(d) for more time to respond to the motion or under Rule 16(b) for an amendment to the scheduling order in this case.   Moreover, even if Plaintiffs' claim file is now "central" to Sunstone's bad faith claim, Sunstone fails to explain why it was unable to allege that simple fact when it originally alleged its counterclaims.   Therefore, the Court finds that none of these purported justifications survive scrutiny.

13

"shortly" before a scheduled mediation.   Dkt. No. 208 at 8.   First, as noted above,

there is no evidence in the record that Plaintiffs have failed to pay Sunstone for

defense costs that have been *invoiced* to Plaintiffs.   *See* n.5 supra.   Put another

way, the evidence reflects that, if Plaintiffs were sent an invoice for defense costs

incurred prior to the date counsel was appointed for Sunstone, that invoice was

paid.   To the extent Plaintiffs have failed to pay for defense costs for which they

have not received an invoice or for which Sunstone cannot even provide the

alleged unpaid invoice, this is not unreasonable.   *See Best Place*, 920 P.2d at 347

(explaining that an "erroneous decision" not to pay a benefits claim is not alone

bad faith).   Second, to the extent this portion of Sunstone's fluctuating claim is

premised upon the failure to pay defense costs incurred *after* the appointment of

counsel for Sunstone, which Sunstone does not appear to specifically argue in its

opposition, it is meritless.   Notably, Plaintiffs forewarned Sunstone that from the

day counsel was appointed, the insurers would not pay for defense costs incurred

by Sunstone's previous counsel.   Sunstone cannot now, therefore, complain that

Plaintiffs have acted unreasonably in simply following through on that warning,

unless, as discussed further below, Plaintiffs engaged in bad faith in providing a

defense to Sunstone.

Third, Sunstone asserts that Plaintiffs substituted appointed counsel "shortly" before a mediation.   Although Sunstone does not specifically say so, it appears that this assertion is a form of contending that Plaintiffs engaged in bad faith in defending Sunstone.   The claim, however, whatever its genesis, is heavy on innuendo and devoid of any evidentiary support.   Essentially, Sunstone's implication appears to be that, because Plaintiffs appointed counsel "shortly" before a mediation and new counsel had a smaller monetary budget to defend Sunstone, Plaintiffs must have engaged in bad faith.   *See* Dkt. No. 208 at 3-5, 7-8. There is no evidence, however, of bad faith.   Instead, as Plaintiffs point out, at most, there is perhaps some "metaphysical doubt" that could be derived from Sunstone's allegations.   *See* Dkt. No. 257 at 7.   Moreover, even if there was some nefarious plot on the part of Plaintiffs in appointing counsel or regarding the timing of that appointment, Sunstone makes no argument (nor provides evidence) that it suffered any damage from Plaintiffs' conduct.   *See Delmonte v. State Farm Fire & Cas. Co.*, 975 P.2d 1159, 1175-76 (Haw. 1999) ("A cognizable claim of tortious bad faith requires a showing of damage causally related to [the insurer's] actions.").   For example, Sunstone contends that the substitution in appointed counsel occurred before a mediation.   Sunstone makes no argument at all, though, about the mediation, such as whether it went adversely or otherwise for Sunstone,

15

much less how new counsel might have been responsible for such a result, and the Court declines to speculate.[8]   Therefore, in this light, Plaintiffs are also entitled to summary judgment with respect to Sunstone's morphed claims of bad faith.

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs' fourth motion for partial summary judgment, Dkt. No. 195, is GRANTED.

IT IS SO ORDERED.

DATED: December 8, 2022 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

---

*St. Paul Fire and Marine Insurance Company, et al vs. Bodell Construction Company, et al.*; Civil No. 22-00288 DKW-WRP; **ORDER GRANTING PLAINTIFFS' FOURTH MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

[8]Sunstone also asserts that it expressed "concerns regarding the potential harms of Plaintiffs' defense strategy."   Dkt. No. 208 at 4.   Not one of those purported "harms," however, is identified, let alone substantiated.   Moreover, this assertion belies any suggestion that Sunstone could not have alleged its new claims when originally filing its counterclaims, given that Sunstone contends that it expressed concerns "[t]hroughout" the Underlying Litigation.